UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ADAM BENNEFIELD,

               Petitioner,           **DECISION AND ORDER**
                                                                      **NO. 06-CV-6104(VEB)**

    -vs-

SUPERINTENDENT ROBERT KIRKPATRICK,
Wende Correctional Facility Superintendent,

               Respondent.

**I.    Background**

By a petition for a writ of habeas corpus, *pro se* petitioner Adam Bennefield seeks release from custody pursuant to 28 U.S.C. § 2254 and challenges his conviction, following a guilty plea, to kidnapping and related charges. The conviction here at issue stems from an incident on March 2, 2000, in which petitioner crashed the car he was driving into another vehicle occupied by his ex-fiancée, Tara Rene Barber ("Barber"), and Takina Willis ("Willis"). The vehicle petitioner was driving was stolen. Petitioner then ordered the two women out of their car at gunpoint and abducted them by removing them to his automobile. After the abduction, and while the two victims were passengers in the moving car driven by petitioner, one victim (Willis) jumped from the car, which was moving at fifty miles per hour–in order to escape. The other victim, who remained in the car (Barber), told petitioner that she was pregnant with his child for fear that he would otherwise kill her. The abduction ended without injury to Barber. Petitioner subsequently was charged with two counts of second degree kidnapping, under New York Penal Law ("P.L.") § 135.20 (counts one and two); first degree criminal use of a firearm, under P.L. § 265.09-1(b)

(count three); two counts of first degree unauthorized use of a vehicle, under P.L.§ 165.08 (counts four and five); second degree burglary, under P.L. § 140.25-2 (count six); second degree unlawful imprisonment, under P.L. § 135.05 (count seven); third degree burglary, under P.L § 140.20 (count eight); and third degree robbery, under P.L. § 160.05 (count nine).

On September 15, 2000, while in custody for the kidnapping charges, in addition to a probation violation, defendant escaped from the Erie County Correctional Facility. Consequently, after his re-arrest he was charged in another indictment with escape in the first degree (P.L. § 205.15).

On September 20, 2000, the day trial was set to commence, petitioner elected to plead guilty to two counts of attempted kidnapping under P.L.§§ 110.00 and 135.20 and one count of escape, under P.L. § 205.15. He was subsequently sentenced to concurrent determinate sentences of fifteen (15) years incarceration on each of the kidnapping counts and a consecutive indeterminate term of two (2) to six (6) years on the escape charge, for an aggregate sentence of seventeen (17) to twenty-one (21) years.

On appeal, appellate counsel presented the following three points: (1) petitioner's federal and state due process rights were violated because the guilty pleas were entered into involuntarily; (2) petitioner's waiver of appellate rights was invalid; and (3) petitioner's sentence was harsh and excessive. On February 4, 2005, the Appellate Division, Fourth Department unanimously affirmed the judgment. *People v Bennefield*, 306 A.D.2d 911, (4th Dep't. 2005). The court held that petitioner voluntarily, knowingly and intelligently waived his right to appeal and that the waiver encompassed defendant's contention that the sentences imposed on the convictions in both appeals were harsh and severe. Lastly, the court held that petitioner,

following a psychiatric examination, was found to be competent on two occasions, including two days before the plea proceedings, and nothing in the record showed that he was not mentally fit to proceed. Consequently, the Fourth Department held, the trial court did not abuse its discretion in declining to order another competency examination. On February 9, 2005, the petitioner appealed the issue of the voluntariness of his plea and argued that the trial court failed to adequately insure that petitioner was knowingly, voluntarily, and intelligently waiving a psychiatric defense by pleading guilty. The New York Court of Appeals denied petitioner's leave application on September 18, 2003. *People v Bennefield*, 100 N.Y.2d 617 (N.Y. 2005).

On January 27, 2005, petitioner filed a motion to vacate the judgment and vacate his sentence under both New York Criminal Procedure Law ("C.P.L.") § 440.10 and § 440.20. In the motion, petitioner argued that he was denied the effective assistance of counsel because his attorney failed to assert extreme emotional disturbance or mental illness as a defense and failed to advise petitioner about the mandatory term of post-release supervision; that his conviction was obtained in violation of the Fifth Amendment's double jeopardy clause; and that the sentence imposed was illegal, invalid, and unauthorized by the law. The trial court denied all aspects of petitioner's motion. Petitioner sought leave from the Appellate Division, Fourth Department to appeal the denial of his motion. In an order dated May 10, 2006, the Fourth Department denied petitioner leave to appeal.

In the instant habeas corpus petition, petitioner presents four grounds for relief: (1) that he received ineffective assistance of counsel; (2) his plea was procured illegally; (3) double jeopardy attached to his convictions; and (4) that he was denied constitutional rights because his plea was taken in the judge's chambers instead of an open courtroom.

## II. Discussion

### A. General Legal Principles

Section 2254(a), specifies that federal habeas review is only available for state prisoners if they are in custody in violation of the constitution or laws or treaties of the United States. It should be noted that federal habeas corpus review is not available for errors of state law. *Lewis v Jeffers*, 497 U.S. 764, 780, (1990); 28 U.S.C. § 2254(a). In order to obtain federal habeas review, it is necessary for the petition to contain a federal constitutional issue.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it decides that the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *see also*, *e.g.*, *Greiner v Wells*, 417 F.3d 305 (2d Cir. 2005), quoting 28 U.S.C. § 2254(d).

The Supreme Court has held that federal courts shall "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citations omitted). "This rule applies whether the state law ground is substantive or procedural." *Id.* (citations omitted). The independent and adequate state ground doctrine may bar federal habeas review "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement"

for in such cases "the state judgment rests on independent and adequate state procedural grounds." *Id.* (citing, *inter alia*, *Wainwright v. Sykes*, 433 U.S. 72, 81, 87 (1977)). Thus, an adequate and independent finding of procedural default precludes federal habeas review of the federal claim, unless the habeas petitioner can show "cause" for the default and "prejudice" attributable thereto, *Murray v. Carrier*, 477 U.S. 478, 485 (1986), or demonstrate that the failure to consider the federal claim on habeas will result in a "fundamental miscarriage of justice," *id.* at 495 (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)).

      **B.**     **Analysis of Petitioner's Claims**

            **1.**     **Ineffective Assistance of Trial Counsel**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for evaluating whether the assistance rendered by a petitioner's attorney was ineffective: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Counsel's performance is to be judged by an "objective" standard of "reasonableness," *id.* at 688, and "[j]udicial scrutiny of counsel's performance must be highly deferential" with the reviewing court making "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time [,]" *id.* at 689. Because there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," the petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 689 (citation omitted).

The second prong of the *Strickland* standard requires the petitioner to demonstrate that he was prejudiced by counsel's deficient performance. 466 U.S. at 687. In the context of a guilty plea, the "prejudice" requires petitioner to show that counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, the reviewing court must ask whether there is a "reasonable probability" that, without the mistakes made by counsel, the petitioner still would have elected to plead guilty rather than proceed to trial. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

Here, Bennefield complains that his counsel was allegedly ineffective for failing to tell him all the direct consequences of taking a plea, for failing to provide a defense, and for failing to adequately investigate the case. In denying Bennefield's C.P.L. § 440.10 motion, the trial court held that "defendant's vague and undocumented assertions of trial counsel incompetence are insufficient to sustain vacatur." That observation was accurate. On habeas review, "[p]etitioner's generalized and vague claims of counsel's ineffectiveness . . . are insufficient to state a *Strickland* claim." *Sweat v. United States*, No. 05-CV-221, 95-CR-232, 2005 WL 3179672, at *8 (N.D.N.Y. Nov. 29, 2005) (citing, *inter alia*, *Slevin v. United States*, 1999 WL 549010 at *5 (S.D.N.Y. July 28, 1999) ("Petitioner's conclusory allegations that counsel evinced 'a general lack of preparation' do not demonstrate that absent the alleged errors, the outcome of the trial would have been different. Petitioner has not elaborated on how counsel's alleged general lack of preparation prejudiced the outcome of his trial. Accordingly, such purported lack of preparation cannot be deemed ineffective assistance of counsel."), *aff'd*, 234 F.3d 1263 (2d Cir.2000); *Sirotnikov v. United States*, 1998 WL 770557, at *4 (S.D.N.Y. Nov.2, 1998) ("Petitioner's naked assertion that his trial counsel 'failed to adequately perform pretrial research

and investigation,' does not establish ineffective assistance of counsel."); *Vasquez v. United States*, 1997 WL 148812, at *1-2 (S.D.N.Y. Mar.28, 1997) ("[P]etitioner's allegations with regard to alleged counsel errors in pre-trial preparation and investigation and trial advocacy are 'vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source,' and, accordingly, . . . '[t]he vague and unsubstantiated nature of the claims' defeated petitioner's claim of ineffective assistance of counsel. . . ."); *Matura v. United States*, 875 F. Supp. 235, 237-38 (S.D.N.Y.1995) (mere conclusory allegations that counsel was ineffective fails "to establish that his counsel's performance was deficient [and] . . . fails to overcome the presumption [under *Strickland*] that counsel acted reasonably. . . ."); *Hartley v. Senkowski*, No. CV-90-0395, 1992 WL 58766, at *2 (E.D.N.Y. Mar. 18, 1992) ("In light of this demanding [*Strickland*] standard, petitioner's vague and conclusory allegations that counsel did not prepare for trial or object to errors carry very little weight.")).

Simply put, Bennefield has failed to demonstrate that trial counsel's performance was outside "reasonable professional norms." As respondent points out, the record illustrates competent performance on trial counsel's part. Counsel filed appropriate pre-trial motions and attempted to procure an independent psychologist to prove Bennefield was incompetent, despite three other experts opining that he was competent. Counsel also obtained a plea agreement pursuant to which Bennefield was able to plead guilty to an offense that was one grade lower than the offense charged in the indictment. Finally, counsel procured concurrent sentencing on the attempted kidnapping charges (the top two counts of the indictment) and convinced the trial court to impose a sentence on the escape charge that was less than the maximum possible.

Bennefield also faults trial counsel for failing to assert the affirmative defense of extreme

emotional distress. "Recognizing that some intentional homicides may result from "an understandable human response deserving of mercy," *People v. Casassa*, 49 N.Y.2d 668, 680-81, 427 N.Y.S.2d 769, 404 N.E.2d 1310 (N.Y.), *cert. denied sub nom. Casassa v. New York*, 449 U.S. 842, 101 S.Ct. 122, 66 L.Ed.2d 50 (1980), the New York State Legislature created the affirmative defense of extreme emotional disturbance, which reduces intentional murder to first degree manslaughter if the defendant establishes its elements by a preponderance of the evidence." *Buckner v. Burge*, No. 06-CV-1180(SLT)(CLP), 2010 WL 1328982, at *5 (E.D.N.Y. Mar. 31, 2010) (citing N.Y. PENAL LAW §§ 125.20(2); 125.27(2)(a); *People v. Moye*, 66 N.Y.2d 887, 890, 498 N.Y.S.2d 767, 489 N.E.2d 736 (N.Y.1985) (discussing the elements of the extreme emotional disturbance affirmative defense)). Extreme emotional disturbance is a statutory, partial affirmative defense that is available where "[t]he defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." *Vargas-Sarmiento v. United States Dept. of Justice*, 448 F.3d 159, 166 (2d Cir.2006) (citing N.Y. Penal Law § 125.25(1)(a)). First of all, it does not appear that such a defense would have been available simply due to the nature of the crimes with which Bennefield was charged. Furthermore, even if a defense of extreme emotional disturbance could have been asserted in connection with the charged offenses, Bennefield has never come forward with any proof, beyond his alleged incompetency, that such a defense would have been viable under the circumstances of his case. Bennefield thus has not shown that trial counsel's performance was deficient or that his defense was prejudiced by this purported omission.

### 2. Involuntariness of Petitioner's Guilty Plea

Respondent contends that Bennefield's claim regarding the voluntariness of his guilty

plea is procedurally defaulted under the "adequate and independent state ground" doctrine because he failed to properly preserve the claim for appeal by moving to withdraw the plea. The Appellate Division's order clearly states that this claim was dismissed on the basis that Bennefield failed to preserve the contention that his pleas were involuntarily entered into because he did not move to withdraw the pleas or to vacate the judgments of conviction. Respondent contends that the appellate court relied upon an adequate and independent state ground to dismiss the claim as procedurally barred, thereby precluding further federal habeas review of the claim.

The Court agrees with respondent that the state appellate court relied upon an "adequate and independent state ground" in rejecting Bennefield's contention regarding the voluntariness of his guilty plea. The procedural bar clearly was an "independent" ground since it was the sole basis for the state court's decision. Furthermore, as discussed below, it was a fully "adequate" basis for the decision. "[A] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir.1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). Whether application of the procedural rule is "'firmly established and regularly followed'" must be judged in the context of "the specific circumstances presented in the case," and "of the asserted state interest in applying the procedural rule in such circumstances." *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir.2003) (quoting *Lee v. Kemna*, 534 U.S. 362, 386-87 (2002)).

In New York, the "firmly established and regularly followed rule," *Lee*, 534 U.S. at 386, 122 S.Ct. 877, for preserving a claim that a guilty plea was involuntarily entered requires a defendant to move to withdraw the plea or to vacate the judgment of conviction. *See People v. Hilliard*, 39 A.D.3d 1021, 832 N.Y.S.2d 461, 2007 WL 1147311, at *1 (App.Div.3d Dept. Apr.

19, 2007) ("[D]efendant's assertion that his guilty plea was involuntarily entered is unpreserved for our review in light of his failure to move to withdraw the plea or vacate the judgment of conviction[.]"); *People v. Smith*, 34 A.D.3d 1127, 1127, 824 N.Y.S.2d 504 (App.Div.3d Dept.2006); *People v. Peterson*, 35 A.D.3d 1195, 1196, 825 N.Y.S.2d 622 (App.Div. 4th Dept.2006) ("Although the contention of defendant that his plea was not knowingly, voluntarily or intelligently entered survives the waiver of the right to appeal, by failing to move to withdraw his plea or to vacate the judgment, defendant failed to preserve that contention for our review[.]"); *People v. Johnson*, 25 A.D.3d 331, 331, 805 N.Y.S.2d 830 (App.Div. 1st Dept.2006) ("Since defendant did not move to withdraw his plea, his challenge to the plea's voluntariness is unpreserved[.]").

As noted above, the procedural rule requiring a motion to withdraw the plea to preserve a claim of involuntariness constituted the appellate court's sole basis for decision in Bennefield's case, and, as the foregoing cases make clear, compliance with the rule was demanded in the circumstances presented here. Furthermore, Bennefield failed to comply with the procedural rule. Thus, the procedural bar relied upon by the appellate court in this case was "firmly established and regularly followed," and therefore constitutes an adequate state ground barring review of the merits of Bennefield's claim.

The next consideration is consider whether there exists "cause" for Bennefield's procedural default of this claim and, in addition, whether he will suffer actual "prejudice" as a result of being precluded from asserting this claim on habeas review. Neither "cause" nor "prejudice" is discernible and, furthermore, Bennefield has not demonstrated that he is "factually innocent" so as to warrant the fundamental miscarriage of justice exception. Accordingly, I find

that this claim is subject to an excused procedural default, and is dismissed on that basis.

### 3. Double Jeopardy Claim

In his C.P.L. § 440.10 motion, Bennefield argued that his misdemeanor convictions of trespassing (P.L. § 140.10), petit larceny (P.L.§ 155.25), and harassment (P.L.§ 240.30) in Buffalo City Court violated the due process clause because they arose from the same criminal acts as his two felony convictions from Erie County Supreme Court for attempted kidnapping in the second degree (P.L. §§ 110.00, 135.20). The trial court denied petitioner's motion, holding that the offenses were fundamentally different and contained different elements. The Appellate Division denied petitioner's leave to appeal the lower court's determination.

To establish a violation of the Double Jeopardy clause of the Fifth Amendment, "the applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *accord, e.g, United States v. Dixon*, 509 U.S. 688, 697 (1993) ("In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies"); *United States v. Liller*, 999 F.2d 61, 63 (2d Cir. 1993).

As respondent observes, petitioner has not explained how the three separate charges violated the Double Jeopardy clause; the only possible basis appears to be that they arose from the same criminal transaction. That, however, is not illegal. Bennefield has never explained how the three different crimes had the same elements or were dependent on identical facts. A

comparison of Bennefield's misdemeanor convictions with his felony convictions demonstrates that the crimes contain different elements and required proof of separate and additional facts. Bennefield thus has not demonstrated how the C.P.L. § 440.10 court's rejection of his Double Jeopardy claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent as set fort in *Blockburger*.

### 4. Sixth Amendment Right to a Public Trial

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const., amend. VI. The "public trial" clause was made applicable to state prosecutions by *In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948). Thus, under the Sixth Amendment, a defendant in a state criminal proceeding is entitled to a public trial. *See id.*; *accord, e.g., Presley v. Georgia*, ___ U.S. ___, 130 S.Ct. 721, 724-25, ___ L.Ed.2d ___ (2010) (*per curiam*);[1] *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (a courtroom cannot be closed to the public unless: "[ (1) ]

---

[1] *Presley*, a *per curiam* opinion, reversed a criminal judgment where the trial court had excluded members of the public, including the defendant's uncle, from the courtroom during voir dire based on a supposed lack of space and the expressed concern that jurors might overhear inherently prejudicial remarks from observers during *voir dire*. Over defense counsel's objection, the trial court determined that there just was not available space for the attendees to sit in the audience. When he asked for some accommodation the court refused stating the uncle could come back in once the trial started. At a hearing on a post-conviction motion, Presley presented evidence showing that the prospective jurors could have been accommodated in the courtroom, still leaving adequate room for the public. The Georgia Supreme Court affirmed the conviction, finding that the trial court had an "'overriding interest'" in ensuring that potential jurors heard no inherently prejudicial remarks from observers during voir dire, and rejecting Presley's argument that the trial court had a *sua sponte* duty to consider alternatives to closing the courtroom when none were offered by the defendant. The Supreme Court disagreed, holding held that "trial courts are required to consider alternatives to closure even when they are not offered by the parties" and that "[t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials." *Presley*, 130 S.Ct. at 724-725. The Supreme Court explained that while "[t]here are no doubt circumstances where a judge could conclude that threats of improper communications with jurors or safety concerns are concrete enough to warrant closing voir dire[,]" "in those cases, the particular interest, and threat to that interest, must 'be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Id.* at 725 (quoting ). *Presley* did not state that it was to be applied retroactively on habeas review; nor has any subsequent opinion so held. *E.g., Julian v. Commonwealth of Pennsylvania*, Civil Action No. 09-1710, 2010 WL 1854121, at *4 (W.D.Pa. May 3, 2010))

the party seeking to close the hearing . . . advance[s] an overriding interest that is likely to be prejudiced, [ (2) ] the closure . . . [is] no broader than necessary to protect that interest, [ (3) ] the trial court . . . consider[s] reasonable alternatives to closing the proceeding, and [ (4) ] it ... make[s] findings adequate to support the closure)"); *Gibbons v. Savage*, 555 F.3d 112, 115 (2d Cir. 2009).

> Petitioner states in his habeas petition,
>
> The court took defendants [sic] plea inside chambers, did not allow any of the public to attend and failed to give their [sic] reason for this in Open Court nor allow the public to attend or voice opposition in regards to not being able to attend the trial (plea) proceedings.

Petition, ¶12(D) (Docket #1). Petitioner raised this claim for the first time on May 1, 2005, in a "supplemental motion to vacate the judgment" under C.P.L. § 440.10. *See*, *e.g.*, Petitioner's Memorandum of Law dated May 1, 2005, Respondent's Exhibit D. Bennefield argued that a "plea of guilty is more than a [sic] admission of conduct; it is a conviction," and accordingly contended that his Sixth Amendment right to a public trial was violated by his plea colloquy being conducted in the "the Judge's chambers (court chambers / robing room)." Petitioner's Affidavit dated May 1, 2005 (citations omitted)).

In denying the motion to vacate, the state court was silent as to why it rejected petitioner's claim that he was denied the right to an open trial. Respondent argues that state law deems that petitioner was barred from asserting this issue under C.P.L. § 440.10(2)(c). C.P.L. § 440.10(2)(c) states that the court must deny a motion to vacate judgment when: "although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon

the motion, no such

appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him." N.Y. Crim. Proc. Law § 440.10(2)(c). Respondent notes that despite addressing the merits of the other issues raised in his motion, the state court was silent as to this particular claim. Respondent suggests that it is likely that it did not address petitioner's public trial claim because he was procedurally barred from raising this issue, in contrast to the other issues raised in the motion to vacate.

The Court disagrees with respondent that the adequate and independent state ground applies in this case, given that the state court did not expressly rely upon the state procedural bar rule codified in C.P.L. § 440.10(2)(c). "[Federal courts] will presume that there is no independent and adequate state ground for a state court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Id.* at 734-35, 111 S.Ct. 2546 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)); *see also Harris v. Reed*, 489 U.S. 255, 266, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). In *Harris v. Reed*, the Supreme Court found that the state court had not "clearly and expressly" relied on waiver despite the fact that "[i]n its order, the Appellate Court referred to the 'well-settled' principle of Illinois law that 'those [issues] which could have been presented [on direct appeal], but were not, are considered waived.'" *Harris*, 489 U.S. at 258, 109 S.Ct. 1038 (quoting state court). Similarly, in *Jones v. Stinson*, the Second Circuit applied the presumption to conclude that it was not barred from reaching a petitioner's

claim. The *Jones* court observed that although the appellate division may have believed that petitioner was procedurally barred from presenting on appeal an issue that he did not raise below. However, the Second Circuit ruled, following the presumption established by the Supreme Court required asking not what it thought the state court actually might have intended but whether the state court plainly stated its intention. "Absent a plain statement, [a habeas court] conclusively presume[s] that the state court did not intend to rely upon state law[.]" *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000) (citing *Coleman*, 501 U.S. at 734-35).

Such is the case here. The C.P.L. § 440.10 court did not set forth the factual predicate for a finding of procedural default, much less give a "clear and plain statement" that it was relying upon the procedural bar rule to dismiss the claim. *See id.* Because state court apparently did not adjudicate the public trial claim at all, it is questionable under the Second Circuit's earlier cases as to whether there is an "adjudication on the merits" to which AEDPA deference is owed. *See Sims v. Stinson*, No. 00-2479, 8 Fed.Appx. 14, *16, 2001 WL 303750, at **2 (2d Cir. Mar. 28, 2001) (unpublished opn.) ("Unlike the underlying decision in *Jones v. Stinson*, 229 F.3d 112, 117-18 (2d Cir.2000), in which the Appellate Division alluded to waiver under state law but also concluded that the trial court's rulings did not deny the defendant a fair trial, the Appellate Division here did not refer to federal law at all, nor to any constitutional right of Sims. We find that the Appellate Division did not decide Sims's due process claim and thus *Washington* controls. Accordingly, we apply the pre-AEDPA standard of review."). The Second Circuit's 2006 decision in *Jimenez v. Walker* is the most recent pronouncement on this issue. The Court reads *Jimenez* as suggesting that a decision such as the one issued by the state court here is "deemed to rest on the merits of the federal claim . . . because there is no plain statement to the

contrary." *Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006). Accordingly, AEDPA deference seemingly applies. *Id.* Thus, even if the Court were to apply a *de novo*, pre-AEDPA standard, habeas relief is not be warranted.

Bennefield's primary authority for this claim is a then-recent Second Circuit case, *United States v. Diomedes Alcanatra*, 396 F.3d 189 (2d Cir.2005), in which one of the defendants brought a Sixth Amendment challenge to the district court's decision to conduct plea and sentencing hearings in the robing room rather than in open court. *See id.* at 193. "Although no members of the public or press complained," the Second Circuit concluded that "conducting the proceeding in the robing room violated the public and press's *First Amendment* rights." *Id.* (emphasis supplied) The Second Circuit stated, "[t]he public and press have a right to trust that the rules and procedures we have established will be followed. Therefore, *in the exercise of our supervisory powers*, we remand both cases to the District Court for further proceedings to be held in the public courtroom." *Alcantara*, 396 F.3d at 192 (emphasis supplied). This Court, sitting in federal habeas review, cannot lawfully exercise supervisory powers over the courts in New York State's judiciary system. Accordingly, *Alcantara* is not precedential authority in this habeas matter.

"Where a defendant, with knowledge of the closure of the courtroom, fails to object, that defendant waives his right to a public trial." *United States v. Hitt*, 473 F.3d 146, 155 (5th Cir. 2006) (footnote omitted) (citing *Levine v. United States*, 362 U.S. 610, 618-19, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960); *Singer v. United States*, 380 U.S. 24, 35, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) (noting that a defendant can waive the right to a public trial); *Lacaze v. United States*, 391 F.2d 516, 520-21 (5th Cir.1968) (holding that the court's order that the courtroom be locked

during one session of the trial was not reversible error when the defendant did not object to the closure)). In *Levine*, the Supreme Court explained,

> The continuing exclusion of the public in this case is not to deemed contrary to the requirements of the Due Process Clause without a request having been made to the trial judge to open the courtroom at the final stage of the proceeding, thereby giving notice of the claim now made and affording the judge an opportunity to avoid reliance on it. This was not a case of the kind of secrecy that deprived petitioner of effective legal assistance and rendered irrelevant his failure to insist upon the claim he now makes. Counsel was present throughout, and it is not claimed that he was not fully aware of the exclusion of the general public. The proceedings properly began out of the public's presence and one stage of them flowed naturally into the next. There was no obvious point at which, in light of the presence of counsel, it can be said that the onus was imperatively upon the trial judge to interrupt the course of proceedings upon his own motion and establish a conventional public trial. We cannot view petitioner's untenable general objection to the nature of the proceedings by invoking Rule 42(b) as constituting appropriate notice of an objection to the exclusion of the general public in the circumstances of this proceeding under Rule 42(a).

*Levine*, 362 U.S. at 619. Federal circuit courts have held that "[a] defendant's attorney's waiver of the right to a public trial is effective on the defendant." *Hitt*, 473 F.3d at 155 (citing *United States v. Sorrentino*, 175 F.2d 721, 723 (3d Cir.1949); *Martineau v. Perrin*, 601 F.2d 1196, 1200-01 (1st Cir.1979)).[2]

The waiver principle articulated in *Levine* is not inconsistent with *Waller*, which, unlike the situation here, involved courtroom closure for a suppression hearing over the defendants

---

[2] The Court notes that the Second Circuit has held that "there is no clearly established binding precedent [from the Supreme Court] as to either whether personal waiver of the right to a public trial is constitutionally required, or as to whether waiver by counsel requires consultation with a client." *Daughtry v. Greiner*, No. 01-2466, 2002 WL 31819589, at *1 (2d Cir. Dec. 16, 2002) (unpublished opn.). In that case, the Appellate Division had found that trial counsel had effectively waived Daughtry's right to a public trial, and the Second Circuit applied the presumption of correctness to that factual finding and found it beyond review. "To the extent that petitioner argues that defense counsel's waiver was not effective because a defendant must *personally* waive the right to a public trial, or that waiver by counsel is only effective insofar as counsel consults with his client," the Second Circuit found that AEDPA precluded habeas relief because of the lack of clearly established Supreme Court precedent regarding whether a defendant must personally waive his public-trial right or whether, if the right is to be waived by counsel, there must be consultation with the defendant. *Id.*

objection. *Hitt*, 473 F.3d at 155 n. 8 (citing *Waller*, 467 U.S. at 40-41). "Only if there was no waiver can the courtroom closure violate the Sixth Amendment." *Hitt*, 473 F.3d at 155 n.8 (citing *Levine v. United States*, 362 U.S. at 618-19 (holding that a defendant's attorney's failure to request that a courtroom previously closed for grand jury proceedings be re-opened waived the defendant's right to a public trial)).

Here, neither Bennefield nor his trial counsel raised any concern about the plea proceedings being conducted in the judge's chambers.[3] Under *Levine*, Bennefield's failure to register a specific, timely objection to conducting the plea proceedings *in camera* effected a waiver of any right he may have had to an open plea hearing. *Accord*, *e.g.*, *United States v. Guzman*, No. 07-40153, 271 Fed.Appx. 442, *444, 2008 WL 828129, at **2 (5th Cir. Mar. 28, 2008) ("However, Guzman failed to object to the closure of the courtroom and therefore waived any right he may have had to an open sentencing hearing.") (citing *United States v. Hitt*, 473 F.3d at 155).

Even assuming *arguendo* that the closed, *in camera* plea proceeding in this case actually violated the Bennefield's Sixth Amendment right to a public trial, habeas relief is not warranted. This is because the record is devoid of "any suggestion that new open proceedings would likely produce a substantial change in the parties' positions[.]" *Hunt v. Tucker*, 875 F. Supp. 1487, 1530 (N.D. Ala. 1995) (citing *Waller*, 467 U.S. at 50). The transcript of the proceedings were available to the press and the public; thus, "the *Waller* and *Valenti* requirements of practical common sense relief 'appropriate to the violation' and consistent with the policy considerations

---

[3] As an aside, the Court has gleaned from the transcript that Bennefield decided to plead guilty on the morning *voir dire* was set to commence, and there over 100 prospective jurors waiting in the judge's courtroom. It appears that moving the plea colloquy into the judge's chambers was a result of that circumstance.

which form the basis for the right to a public trial," *Hunt*, 875 F. Supp. at 1530 (quoting *Waller*, 467 U.S. at 50)).

**IV.     Conclusion**

For the reasons set forth above, the petition for a writ of habeas corpus filed by petitioner Adam Bennefield is **denied**. Furthermore, the Court finds that petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). Therefore, no certificate of appealability shall issue with respect to any of petitioner's claims.

**IT IS SO ORDERED.**

/s/ Victor E.Bianchini
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:     October 5, 2010
           Rochester, New York.